(Lucas County, O., Common Pleas.)

CONSOLIDATED ST. RY. CO. v. TOLEDO ELECTRIC ST. RY. CO.

(Affirmed by Circuit Court, 12 C. C., 367.)

(1). Under sec. 3440, R. S., as amended April 11, 1890, (87 O. L., 178) a street railway company in the city of Toledo may appropriate the right to use the tracks of another street railway company for not more than one-eighth of the length of its entire route actually constructed in the manner provided by part 3, title 2, chap. 8, R. S.

(2). The petition to so appropriate the use of the tracks of one or more other companies may include one or more parcels whether they belong to the same or to different parties, and whether they are in the same municipality or in different municipalities or even in different counties.

(3). As a preliminary condition to the right of a street car company to exercise the right of appropriation, it must show that it has a complete organization by the election of a board of directors and the other statutory officers.

(4). Before a probate court can issue its order for a jury in such appropriation proceedings, the statute requires it to determine four preliminary questions named in the statute. Of these, the question whether the company has been granted by the city the right to construct its tracks in the streets, and whether it has obtained the consent of a majority of the abutting property owners is not one, and the probate court is therefore authorized to ignore this question. But if it should afterwards turn out that the company had not obtained the necessary consents of the property owners, any property owner could have a right to raise that question in any court having jurisdiction.

(5). Before a court, upon error, will reverse a lower court, it must find substantial error to the prejudice of the party complaining. Where therefore in an appropriation proceeding there is no complaint as to the amount of the damages awarded, mere errors on the proceedings are not such substantial errors to the prejudice of the party complaining for which the judgment below will be reversed.

LEMMON, J.

I mean no more than to indicate the conclusions to which we have come after an examination with as much patience as we think we were called upon to exert in the investigation of this subject. We have endeavored to follow the line of argument which has been presented by counsel who have so ably and thoroughly presented their views on either side, and consider the questions which have been put to us, and we have considered them with care and have come to a conclusion

which would probably not be disturbed or seriously modified however far we should carry our investigation.

The whole matter in this controversy grows out of a proceeding under the statute of 1890, to condemn the right to use the property of a street railroad company, in actual operation in Adams street, from Michigan street to Summit street, in the city of Toledo.

The statute is sec. 3440, Rev. Stat., as amended by the act of April 11, 1890 (87 O. L., 178), reads as follows:

"When the council or commissioners make such grant, the company or person to whom the grant is made, may appropriate any property necessary therefor when the owner fails to expressly waive his claim to damages by reason of the construction and operation of the railway. And in any city of the third grade of the first class any person, persons, or company which is authorized to construct and operate and has constructed and is operating a street railway, may appropriate any property necessary for the purpose of occupying and using under sec. 3438 any existing street railway track or tracks subject to the limitations of said section and for not more than one-eighth of the entire distance between the termini of the route as actually constructed, operated, and run over, of the appropriating company or person at the time appropriation proceedings are begun, such appropriation to be made in the mode and manner provided for the appropriation of property in part third, title 2, chapter 8, of the Revised Statutes."

The statute referred to for the appropriation of property begins with sec. 6414, Rev. Stat., and goes through a series of provisions which we need only to sketch in order to bring out the propositions and determinations which will end the case so far as this court is concerned.

These statutes, in brief, provide for, first giving the right, in sec. 6414, and then specifying in succeeding sections the manner of the exercise of that right, the way in which the party shall acquire this property by appropriation. It provides, first, (sec. 6415) that there shall be no appropriation unless the parties are unable to agree with the owner. If they are unable to agree with the owner, then a provision is made, in detail, for what shall be done in order to appropriate the property. These provisions require (sec. 6418) the issuing of summons, or notice, to the owners of the property; the filing of a petition (sec. 6416) as it is called under the statute—and what that petition shall contain, with a statement of what they wish to appropriate; of the interest that they seek to appropriate, and giving it such description as can be given, so that when the matter is examined by the court and the jury it can be ascertained and its value can be estimated. This petition may include one or more parcels,

whether they belong to the same or to different persons and whether they are in the same municipality or in different municipalities, or even in different counties; it provides for the issuance and service of that summons, and in case the defendant is not within the jurisdiction of the court, then for service upon him by publication.

Now after these several provisions, sec. 6420, Rev. Stat., says:

"On the day named in any summons first served, or publication first completed, the probate judge shall hear and determine the questions of the existence of the corporation, its right to make the appropriation, its inability to agree with the owner, and the necessity for the appropriation. Upon these questions the burden of proof shall be upon the corporation, and any interested person shall be heard."

Having gone thus far, I may as well stop here to briefly notice an argument that was made and very strongly pressed upon the attention of the court, that, aside from these matters which are mentioned as preliminary here in this sec. 6420, there is a matter that is preliminary even to those considerations, and that is that before authority to appropriate is obtained, the city council must be seen; for this is an appropriation of a right within a street, and under sec. 2640, Rev. Stat., the authority to supervise the streets of a city—to control them—is given entirely to the common council, to the municipality, and they are charged to keep the streets open and free from nuisance, and it was said that before the council could grant, or had authority to grant the right in the first instance—a right which is in its nature administrative—before they had authority to grant that permission to use the streets, it was essential that the party seeking to appropriate the right in the street—to occupy and use any portion of the street—must have first acquired the consent of a majority of the property owners in fact—represented by the foot along the street—to such use and occupation of the street, and it was strongly pressed upon the attention of the court that this was not obtained in this case—that the probate court refused to stop to inquire whether the party seeking to condemn had or had not the consent of a majority of the property owners, and that after the probate court thus refused, the defendant offered to show affirmatively that the plaintiff had not this necessary consent—this prerequisite to all proceedings to obtain the permission to occupy the street. The probate court ruled against the defense, and their offers in this respect were held—I suppose held—I gather that from the general trend of the bill of exceptions rather than from any specific statement—the court held that the question was one for the common council, and not for the probate court—

that the statute in regard to the condemnation, the section which I have read—6420—named four matters which were to be decided preliminary by the probate court before he shall issue his order for a jury, and that these therefore were the preliminary questions for the probate court.

We are inclined to take that view of the case, and rather approve, admitting, however, as we do so, that if it should turn out that there was not given the requisite preliminary consent, a party who could fairly be said to have been injured by that—a property owner—would have a right to raise that question, and to raise it in any court having jurisdiction and be heard there, and if it were shown to any such court that there was not obtained this first prerequisite to the exercise of that jurisdiction, the proceeding would have to fail and wholly fail, but we are inclined to approve, and do approve the ruling of the proabte court—that that was a question to be presented to and passed upon by the city council who had special charge of that subject, and was a question in which the property owners along the street were alone concerned. We therefore pass the further consideration of that matter.

We now come to the consideration of the question that was made: as to whether the requisites of sec. 6420, Rev. Stat., had been complied with. And we may as well here intimate the views which we take as the question of what evidence shall be sufficient and what shall not be sufficient, for the finding of the probate court upon the preliminary questions.

And let us now notice what these preliminary questions are; so that we can have them perfectly in mind. It says "The probate judge shall hear and determine the questions of the existence of the corporation." That is the first question. "Its right to make the appropriation." That is, not only that it is a corporation, but its right to appropriate property as a corporation must be shown. Third "Its inability to agree with the owner," and, lastly, "The necessity of the appropriation."

Much has been said upon each of these subjects, and much that I think is worthy of the closest consideration.

In the first place, it was said that there was not shown here, by legal evidence, the existence of the corporation; that although some evidence was given, that evidence did not show a completed corporation, one having the powers of a corporation so that it might proceed to exercise this highest act of sovereignty—the taking of property for public use. It was shown in the case, by the certificate of the secretary of state, that there was a primal organization of a corporation, and it gave its name, and conformed substantially to the statute. No question is made

about this, however, that there was a primal organization and an obtaining of a certificate from the secretary of state—the preliminary work of the formation of a corporation. It was claimed, however, after this and after subscriptions of stock had been obtained under and in pursuance of the statute, and after certificate had been made upon that by the secretary of state, that it was necessary that the corporation should complete its organization by the election of a board of directors; for, it is said, that the corporation itself is not complete and has no power to condemn property, to take it, until it is completed as a corporation by the election of a board of directors to represent the corporation, and the proper and statutory officers. Well, we think this is correct. Now then, the question is: Was there such a completed organization at the time these proceedings were begun as to permit the party to proceed to condemn? It is objected that there was no evidence here that was legal evidence. It is said that these books were given in evidence. And of these, it is said, upon the other hand, that they were the books of the company. That, however, it is replied, is not sufficient; it is alleged that it is not shown that there was a completed organization; that there was no election of directors; no vote taken; that there was no declaration of the result; that there was no oath of office; that there was no election of officers; and yet all these appear from the memoranda that is contained in the books which are put in evidence.

Now the simple question for the court to determine is—whether that shall be held to be sufficient.

That brings us to another consideration: With what care will this court look into the determinations of the probate court—the evidence upon which were determined those two preliminary questions? These were all to be decided, as the statute requires, before the jury should be summoned—before any inquiry should be made in regard to the damages. The court must decide that there is a corporation here, authorized to condemn property; that covers the first requisite—first that there is a corporation. Second, that the corporation is authorized to appropriate property. It must also find that the corporation was unable to agree with the owner; and that the condemnation of this property—or the appropriation of this property—is necessary, that is, necessary to subserve the public interest, of course it cannot be taken otherwise.

The duties imposed upon this court in reviewing the determinations of the probate court upon the preliminary questions and considering the evidence which that court had, are somewhat affected by looking through and sighting through to the end of the case and seeing what office the determination of these preliminary questions perform and what is their trend.

wat is the result of these determinations of these preliminary questions by the probate court? Why, as we go on through the statute and pass on through the proceedings shown by the bill of exceptions here, we find that there was jury summoned and the trial proceeds with all these questions which came up in regard to the value and the situation of the property, and damages, and all that sort of thing, and a verdict resulted. After that verdict, in accordance with the statute, there is an examination by the probate court and a confirmation in pursuance of the statute—a confirmation by the probate court of the verdict.

Now the statute provides that when that is done the party seeking to appropriate may pay in his money, and, when he has done so, he shall have the right to take the property thus appropriated. It provides that he may have that right notwithstanding proceedings in error have begun to reverse the case—that he has the property. The clause of the statute in that respect to which I refer is sec. 6433: "Upon payment to the party entitled thereto, or deposit with the probate judge, of the amount of the verdict, and such costs as have lawfully accrued in the case up to the time against the corporation, the corporation shall be entitled to take possession of, and shall hold, the property rights or interests so appropiated, for the uses and purposes for which the appropriation was sought, as set forth in the petition, and the judge shall enter of record an order to that effect, and if necessary, proper process shall be issued to place the corporation in possession thereof."

And this order of which we thus read is called, in the statute and in the petition, a final order. Now, that being the outcome of the matter, and the determination of these preliminary questions only a pointing out of the way to that outcome, what is the duty of this court in reference to the "demand" if I may use that expression, which this court shall make for evidence before the probate court to sustain the determinations which it makes upon the preliminary questions?

It must be remembered here that no suggestion is made, in the argument or otherwise, that the probate court acted fraudulently, negligently, recklessly, or from motives that should not govern a court—nothing of that kind has been suggested: upon the contrary, counsel have taken pleasure, apparently, in expressing the entire approbation which they feel for the care and integrity of that court in the examination of these questions. Now, this being the case, shall this court, merely because it might have come to a different conclusion upon the evidence submitted, upon either of the four preliminary questions to be determined by the probate court—shall this court say it will reverse this case?

There was some evidence—and we may

[COPYRIGHT, 1899, BY CARL G. JAHN.]

as well pass to the consideration of this third proposition—that the party was unable to agree with the owner. The question as to whether there was evidence that the party was unable to agree with the owner here to warrant the finding of the probate judge, was sharply contested in the argument; and I confess those letters left a first impression on my mind that the beginning of the action in the probate court was premature; the negotiation was not broken off, and the letters show a continuing negotiation up to the time of the filing of the petition. I confess that I looked over that matter with as much patience as I could well bestow, and my decision upon that question may be influenced largely by reason of the language of the statute itself in that regard. It is sec. 6415, Rev. Stat., which reads as follows:

"Appropriations can only be made when the corporation is unable to agree with the owner, or his guardian or trustee, as to the compensation to be paid for the property sought to be appropriated, or when the owner is incapable of contract · ing in person or by agent, and has no guardian or trustee, or is unknown, or his residence is beyond the state, or unknown."

Now the negotiations between Mr. Lang and Mr. Robison, as they were given in evidence, bring out the fact that Mr. Lang told him that he had no authority to determine this matter; that the parties who were to determine those matters lived at Chicago, and he perhaps gave the name of the party—Mr. Ream, of Chicago—and there was some correspondence, not directly between Mr. Ream and Mr. Robison, but between Mr. Ream and Mr. Lang, the general superintendent, and between Mr. Lang—as the result of that—and Mr. Robison. The purpose in this statute, in this last clause, "or his residence is beyond the state. or unknown," is so manifest that it is impossible to read it without stopping to consider whether the case here is to be covered by that or not.

Now we will not say that there is any evidence here that the authority to determine this matter was taken away—because it is a question of very large importance to the railway company. We have no disposition to suggest the thought that the authority to determine this matter of compensation was taken from Mr. Lang in order to prevent the Toledo Electric Street Railway Co. from getting service so as to proceed to condemn; because we presume and must presume that if they thought about this matter at all they thought about it with a knowledge of this statute; we wil presume that if they thought about it at all they thought about it with some knowledge of the law in regard to the matter; we think evidently they were not far from counsel, and were enabled to know what their rights would

be and what liabilities were involved; yet it is a fact that they did take—as is shown by the correspondence and by the testimony of Mr. Lang—that they did take from Mr. Lang the authority to determine this question. There was no one here, then, the president of the company being at Chicago, and the manager was here in charge of the property—from whom authority to determine the question had been taken—there was no one here therefore to make this agreement. Mr. Robison had some negotiations with the party at Chicago, and the party promised, in his letter, to come down here, but, from sickness in his family or something of that kind I think it was, he says that he didn't come in time, but came as soon as he could—within a few days—and this proceeding is begun while the negotiations remained right there, thus checked off by the filing of the petition in the probate court for condemnation.

Now it may be said that the probate court had no authority, upon this evidence, to find that they were unable to agree; that the finding of the court is not sustained by the evidence; that it was contradictory to the facts presented to the court, that the finding of the court could not be sustained. If we believe that, if in the preliminary findings it should be found that the court had acted, not by mere error, but conscientiously in fault—not that way—but if the court arrogantly determined any of these preliminary matters which the statute required, in favor of the plaintiff, we should feel like admonishing that court, by reversal, that that could not be done. But where the court has acted conscientiously, and acted upon evidence that was proper to be considered, can we say that the probate court has made a mistake in this matter that should be remedied by reversal here for that reason? We think not. We think that there was evidence at least to show that the party who alone could close this negotiation was not in the state of Ohio, and that they refused to allow any representative within the state to have control in the determination of this question, and that party did not come promptly forward.

Upon the fourth preliminary question: the necessity for the appropriation, we are inclined to think that the probate court had the right, and the jury had the right, to consider all the questions. The jury examined the premises. The statute says:

"If the judge determine these questions for the corporation, as to any or all of the property, the persons interested therein, he shall issue an order to the clerk and sheriff to draw sixteen names from the jury box" etc., and then it provides that evidence may be given to the jury—in the hearing of the jury, and limits the number of witnesses, "may be given," is the language of the statute, clearly indicating the purpose of the legislature that

the examination which the jury shall make, as it is provided for in the statute, shall furnish them with evidence which may be considered together with the testimony, which it is provided may be given by the swearing of witnesses and their examination before the court and in the hearing of the jury. We think therefore that the probate court had evidence to warrant the determinations which it made upon the several preliminary questions, and that in those findings the court has acted fairly and conscientiously and upon proofs and upon so much of proofs that we are inclined to say, had the matter been before this court we would probably have decided as the probate court did upon those questions.

It therefore remains but for us to say that, for these reasons, we cannot reverse, but must affirm, so far, the proceedings of the probate court.

Now the other question—as to whether after the determination by the probate court of the preliminary questions, and the impaneling of the jury—there were very many questions, and I must confess that there are some, which, had the case been tried here, before this branch of the court at least, would have been determined differently. Were those determinations, however, of such a character as to warrant this court in reversing the proceedings and the setting of the case down for trial in this court? First, before a court, upon error, will reverse the proceedings of a lower court, it must find error, and it must find substantial error to the prejudice of the party complaining. And upon that question rests the judgment of this court upon the whole matter. The defendant, the Toledo Consolidated Street Railway Co., plaintiff in error here, is not complaining of the amount of the verdict—it is not complaining of that—no complaint is now made as to that matter. The result of this, whether erroneous or not erroneous, does not injure them, because with that verdict they are satisfied. What can this court do, then? If it goes into these several questions although they have not been injurious to the parties, and that is injurious to them alone which affects them, the amount of the verdict, shall the court reverse? We say, No: we will not look into these matters; we will put them aside and say that, whether errors or not, it is not necessary to, and we will not undertake to determine—they are not errors prejudicial to the party complaining, and therefore the court must affirm the judgment of the probate court.

*Barton, Smith* and *John Doyle*, for Plaintiff.

*Orville* S. *Brumback* and *J. T. Kumler*, for Defendant.